## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **TAMMY EDWARDS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:07-cv-908-MHT** |
| **HYUNDAI MOTOR** | ) | |
| **MANUFACTURING ALABAMA, LLC,** | ) | |
| **and MIKE SWINDLE, individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

---

### PLAINTIFF'S EVIDENTIARY SUBMISSION
### IN OPPOSITION TO
### DEFENDANT, HMMA'S, AND DEFENDANT, SWINDLE'S,
### MOTIONS FOR SUMMARY JUDGMENT
### VOLUME II

---

COMES NOW the Plaintiff and submits the following as evidence in opposition to Defendant, HMMA's, and Defendant, Swindle's Motions for Summary Judgment in the above-referenced matter:

1.     Affidavit of Tammy Edwards.

2.     Various e-mails regarding job openings at HMMA.  (1012-1175).

Respectfully submitted,


 s/ Alicia K. Haynes
Alabama State Bar No.  ASB-8327-E23A
Attorney for Plaintiff

**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama  35226
Phone:  (205) 879-0377
Fax:  (205) 879-3572
E-mail:  akhaynes@haynes-haynes.com
ASB-8327-E23A

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of September 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

J. Tobias Dykes
**CONSTANGY, BROOKS & SMITH, LLC**
One Federal Place, Suite 900
1819 Fifth Avenue North
Birmingham, Alabama  35203

Brian R. Bostick
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203


 s/ Alicia K. Haynes
**OF COUNSEL**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TAMMY EDWARDS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:07-cv-908-MHT |
| HYUNDAI MOTOR | ) | |
| MANUFACTURING ALABAMA, LLC, | ) | |
| and MIKE SWINDLE, individually, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## AFFIDAVIT OF TAMMY EDWARDS

I, the undersigned, Tammy Edwards, hereby swear or affirm that the following is true and correct and based on my personal knowledge.

1.    My name is Tammy Edwards.  I am the Plaintiff in this matter.

2.    When Mike Swindle was promoted to Team Leader, I was assigned to Swindle's team.  Previously I had been assigned to Keith Ulrich's team until I was moved to the CCR position.

3.    In the CCR position I had an office with a computer, a telephone and a radio to communicate with team leaders and managers.  In the office were several cameras or video screens where I could watch the machines or robots on the production line.  It was my job to report any downtime that was created when a

machine malfunctioned or stopped. I would have to ascertain the reason for the malfunction, how much time was lost on the production line, how the machine was repaired and on some occasions photograph the problem with the machine. I compiled all of this information into a report. In some cases I relied on information provided by team leaders, team members or managers who would radio to me the problem.

4.     Plaintiff's Exhibit 47 is an example of one of my reports. Plaintiff's Exhibit 26 is not my report. Plaintiff's Exhibit 26 is the report Tom Bondy testified to in his deposition as having an issue and conveyed this was my poor work product. Plaintiff's Exhibit 26 is a report authored by Amber Kelley who was new to the position.

5.     At no time while I was working as a CCR did anyone complain verbally or in writing to me that my reports were deficient in any way. In fact I was praised for the content of my reports and how complete and accurate the reports were. Specifically, Tom Bondy, Mr. Katzenbach, Harry White and Steve Culpepper told me my reports were very good and to keep up the good work.

6.     I have read Hyundai's brief and also sat through Tom Bondy's deposition where he testified that he and other managers had 15 meetings with me about my reports. This is untrue, there was never a meeting or conversation that was negative about my reports. Mr. Culpepper guided me for a couple of weeks

when I started working as a CCR, but after that he told me I was on my own, I was

fine and knew what I was doing. He also told me that it was nice for him to be

able to go home from work on time as he did not have to correct my reports as he

had done when Pam Stoddard was in the position.

7.    I never told anyone that I wanted to move from the CCR position and

go back to the production floor because I thought Swindle and Kitchen were more

fun to work around.

8.    I never send Swindle an email unless it was a global email that went

to all other people on my email server. I never bought him breakfast. I would go

get his breakfast, but he paid for it and I was directed by him to get his breakfast

and that of his girlfriend Jennifer.

9.    I did not voluntarily leave my employment. The same day I received

a letter from the insurance company stating that I had been denied disability

benefits. I contacted Stacey Jones about returning to work. She did not tell me to

report to the medical department of Hyundai. In fact Jones and Jane Ramsey told I

to report only to them. I taped the individuals making these comments and

provided the tapes to Hyundai during the course of litigation. Jane Ramsey told

me that she had talked to Hyundai's legal department and that I did not have to

contact Steve Culpepper and she would email and let him know. When Ramsey

left Hyundai's employment, Stance Jones told me to report to her.

10.    Prior to being placed on involuntary medical leave I had worked more than 1250 hours to qualify for FLA. leave.  However, at that time I had not worked for Hyundai for a year.  My official date of employment is January 12, 2006.  I tried to return to work on February 12, 2007 and was refused even though my doctor had released me to return to work.  It was my belief at that time and remains my belief today that there are jobs I can perform with my neck injury at Hyundai.  I had my neck injury when I was working fenders and when I worked the CCR position.  I had also worked welding for a short period and done a good job.  Most of the jobs do not require heavy lifting as these are done by the machines or robots.

11.    The 505 and 506 line jobs that Culpepper told me he was going to put me on when I returned from medical leave are the heaviest jobs on that line.  The job I was assigned to after I complained about Swindle was not only requiring me to hammer out gaps in tail gates of vehicles.  The gap was created by a malfunction of one of the machines.  I also had to knock off weld burrs with an 8-inch metal file in addition to the hammering of the gaps.  The line moved every 48 seconds and we worked 12 hour shifts.

12.    While I was assigned the job Kitchens and Culpepper would come by and look at me doing the job.  On occasion they would smile and not say anything.  Other times Kitchens would ask if the job was bothering my neck and was I in

pain yet. It was obvious he was taunting me in the new position because he knew I had neck problems. I had told Culpepper, White, Ulrich, Swindle and Kitchens about my neck injury and the fact I had to take medicine at night and had to move. My neck injury became worse after I worked on the BC1 line hammering and filing.

13.     It is my belief that I was only reassigned to the BC1 line due to my complaints about Swindle. At no time had anyone discussed that I was moving to the line and in fact when I had asked to move to another area or back to fenders, I was told that I would not be moving because I was doing such a good job with the downtime reports. Even when I complained to Bondy about the information I was receiving from the line was faulty information and I would prefer to go back to fenders instead of sending in a wrong report, Bondy told me he would put two people on the downtime board to make sure I received correct information. He did this and the information I was receiving improved.

14.     When I worked under Swindle's supervision his harassment of me began immediately and escalated. His language was profane and always centered on sex. He was obsessed with sex because he was either talking about having sex, wanting sex, what he had done sexually, who he had sex with or wanted to have sex with. I made it clear to Swindle I had married my high school sweetheart, was very much in love with him and had never cheated on my husband. I became a

challenge for Swindle as he bragged about how good he was in bed and that if I just "fucked" him once I would not go back to my husband.  He would ask what it would take for me to cheat just one time with him.  Swindle told me  he had altered my time card and turned in more time and told me I owed him.  I became afraid of Swindle even though I tried hard to be his friend.  I consider myself a religious person and my husband was once a youth minister.  As such I would try witnessing to Swindle to get in church and be a good father and husband.  At first he would just laugh at me, but later he would tell me that he was trying to be good, he just liked sex too much to be good all the time.  Even during these times that I would witness to him he would sexually harass me and call me "fucking Mother Teresa."  I was shocked and humiliated by him referring to me in this manner.

15.    Swindle would also tell me that I had never been f. . . . d and would simulate sexually explicit acts toward me and follow the simulation with sexually inappropriate comments and invitations to have sexual relations with him. Swindle also touched me against my will and would hug my body by pressing his genital area into my body.  He would hug me from the side or on occasion he would butt up against me going down the aisle with his hands behind his back. During these times he would press his genital area against me and say, "Tammy, can you tell me how big I am?" "Why do you think the black women want to fuck me?"  Despite my request for Swindle to stop, he would not cease, but would

increase his sexually inappropriate conduct and comments.  On numerous

occasions Swindle would try and block me with his body while I was walking

down his line and tell me unless I kissed him I could not pass.  He would beg for

me to kiss him or let him kiss me.  He told me to kiss him so everyone would think

we were sleeping together.  He used stronger and more explicit words.  He would

also ask about my sex life and would make inappropriate remarks that were just

sickening.  One of the worst things he said to me was about oral sex and wanting

to know if my husband and I engaged in oral sex.  I tried to ignore him, but he

continued that if I would let him perform oral sex on me, he would lick my ass

raw.

     16.    Swindle would pull my hair or jerk my ponytail if I tried to dodge him

or evade him in the workplace.  Swindle stated all men cheat and when I defended

that was not true, he had me call my husband on his cell phone.  When my

husband did not answer, Swindle started laughing and said he told me so that my

husband was in bed with another woman and that is why he didn't take my call.

     17.    Swindle  rubbed my leg through my pants and remarked that

"someone has on new pants." He then asked if my husband saw me that morning

and when I asked why he said that I looked "damn good" in those pants and if I

were his wife he would not have let me out of the house.

     18.    I have reviewed PX3, specifically D00179, 00180,  00181, 00192 and

00193.  These statements are true and correct to the best of my knowledge as what was conveyed to Team Relations during the investigation.  However, there were other statements and comments made by me that Team Relations did not record that were also the basis of my complaint.

19.    After I had complained to Team Relations, Bondy and Culpepper called me into Bondy's office and I was made to repeat my whole complaint to Bondy and Culpepper.  I was humiliated having to repeat Swindle's comments to these two men.  Bondy told me he was going to fire Swindle that he had been warned time after time and even confirmed this with Culpepper who agreed.  I told Bondy to just move me away from Swindle, but he said that I was not going anywhere, that he would get rid of Swindle.

20.    Later I discovered that Bondy repeated my complaints to Swindle so he could prepare for his interview with Team Relations.  I felt very betrayed and humiliated that Bondy and Culpepper used me in that fashion.  Even though Bondy told me after the meeting in his office that he would get back to me, he never did.  The only thing that was said was Culpepper was asking me to drop the complaint and he would have Swindle apologize to me.  When I said I could not, neither Culpepper nor Bondy talked to me again until I was reassigned six days later and then only Culpepper

21.    When I was moved to the BC1 line, I asked Culpepper and Kitchens

why I was being moved. I was told that it would make me feel more comfortable to be moved from the CCR position to working on the line during the pendency of the sexual harassment investigation. Stacey Jones saw me working on the line and asked why I was there. I remarked that she knew why I was because I had complained about Swindle. Jones told me she had no knowledge about me being placed in the position and would check into it. She never got back to me, nor did anyone while I was still employed.

22.    In the new position on the production floor, I was literally a few feet away from Swindle's desk. Prior to this move, I had been in the computer room, which was located on the second floor in the same area as the salaried manager's office. After my transfer managers and team members refused to talk with me or have lunch with me. Team members did ask why I had turned in Swindle when he and I had a thing going on. When I asked who told them that, they replied that Swindle had told them.

23.    Swindle's harassment of me was constant for five months. During that time there was not a day that went by that he did not say or do something to me that was sexually perverse or touch me in some way seeking sex. I sought medical attention and medication for stress, loss of sleep and depression as a result of Swindle's actions. I also lost weight and was unable to sleep at times. My neck problems increased as did the pain associated with my neck injury. I also dreaded

coming to work and would become physically ill. His actions caused me additional stress at home with my children and my husband.

24.     At no time did I request to be moved to the production floor to be near Billy Kitchens and Mike Swindle. I did, early on, ask if I could back to fenders to get away from Swindle and was told that I was not going anywhere because my reports were so good. I did make a passing comment that I was going to have to go back to the floor because I was gaining weight sitting in the computer room.

25.     I gave Team Relations an exhaustive list of names for them to contact. However, the only people contacted were those individuals who were friends with Swindle. The nonbiased witnesses were never contacted, nor interviewed even though I pressed Team Relations to contact them.

26.     When I asked Team Relations when the investigation would be over, I was given no indication nor was I told of any findings or discipline to Swindle. I was told only if I returned to work would I be entitled to know this information. This was told to me by Stayce Jones.

[REMAINDERS OF PAGE LEFT INTENTIONALLY BLANK]

I declare under penalty of perjury that the above is a true and correct

statement to the best of my knowledge.

Executed this the _30th_ day of August 2008.

_Tammy Edwards_
Tammy Edwards

SWORN TO AN SUBSCRIBED before me on this the _30th_ day of
August 2008.

_Jerry Connell Smith_
Notary


My Commission expires:

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: June 19, 2009
BONDED THRU NOTARY PUBLIC UNDERWRITERS

**Jenny Connell**

**From:** Alicia Haynes [akhaynes@haynes-haynes.com]
**Sent:** Saturday, March 10, 2007 9:52 AM
**To:** trent.scofield@ogletreedeakins.com
**Cc:** Jenny Connell
**Subject:** Tammy Edwards v. Hyundai

Trent,

Thanks for your return telephone call on Ms. Edwards. Can you please tell me the status of her employment? She needs to get back to work. If her job is not available, there are three of the 37 open jobs currently posted that she wants to apply:

```
            "Quality Control"
   Quality Assurance Administrative Assistant
   Job Code:   30

            "Assembly"
   General Assistant Support
   Job Code: 21


            "Accounting"
   Product Costs Analysis
   Job Code: 40
```

Please let me know what we need to do to have Ms. Edward's considered for one of these positions or to be returned to one of her former positions. I will be out of town in trial most of the week, but feel free to call Jenny or to reply via email and I will get back in touch with you. Thanks for your anticipated cooperation in this matter. Alicia


*Alicia K. Haynes*

Alicia K. Haynes
Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, AL  35226
Phone:  (205) 879-0377
Fax:  (205) 879-3572
E-mail:  akhaynes@haynes-haynes.com
Web:  www.haynes-haynes.com

5/18/2007

## Jenny Connell

**From:** Scofield, J. Trent [Trent.Scofield@ogletreedeakins.com]
**Sent:** Wednesday, March 14, 2007 10:36 AM
**To:** Alicia Haynes
**Cc:** Jenny Connell
**Subject:** RE: Tammy Edwards v. Hyundai

Alicia,

Thank you for your e-mail. Ms. Edwards remains currently employed at HMMA. It is my understanding that Ms. Edwards provided HMMA with physician's restrictions which include: (1) no lifting; and (2) alternate between standing and sitting throughout the shift. Do you know if these restrictions are still in place? I also understand that Ms. Edwards has an open application for Long Term Disability benefits. Please advise if you have any information on the status of her LTD claim.

It is also my understanding that the jobs identified in your email are currently "external hire" positions, and no internal candidates are being considered for them at this time. Ms. Edwards' ability to move to another job within HMMA is subject to her qualifications, as well as a number of policies which apply to all Team Members.

I will be on the road for the rest of today and Thurs. Please call when you have a minute and we can further discuss. I copy Jenny for her information and to say Hello. Thanks -- Trent

> -----Original Message-----
> **From:** Alicia Haynes [mailto:akhaynes@haynes-haynes.com]
> **Sent:** Saturday, March 10, 2007 9:52 AM
> **To:** Scofield, J. Trent
> **Cc:** Jenny Connell
> **Subject:** Tammy Edwards v. Hyundai
>
> Trent,
>
> Thanks for your return telephone call on Ms. Edwards. Can you please tell me the status of her employment? She needs to get back to work. If her job is not available, there are three of the 37 open jobs currently posted that she wants to apply:
>
> ```
>                               "Quality Control"
>                    Quality Assurance Administrative Assistant
>                    Job Code:    30
>
>                               "Assembly"
>                    General Assistant Support
>                    Job Code: 21
>
>
>                               "Accounting"
>                    Product Costs Analysis
>                    Job Code: 40
> ```
>
> Please let me know what we need to do to have Ms. Edward's considered for one of these positions or to be returned to one of her former positions. I will be out of town in trial most of the week, but feel free to call Jenny or to reply via email and I will get back in touch with you. Thanks for your anticipated cooperation in this matter. Alicia

*Alicia K. Haynes*

Edwards v. Hyundai, et al.
1013

**From:** Scofield, J. Trent [mailto:TrentScofield@ogletreedeakins.com]
**Sent:** Wednesday, March 14, 2007 9:36 AM
**To:** Alicia Haynes
**Cc:** Jenny Connell
**Subject:** RE: Tammy Edwards v. Hyundai

Alicia,

Thank you for your e-mail.  Ms. Edwards remains currently employed at HMMA.  It is my understanding that Ms. Edwards provided HMMA with physician's restrictions which include:  (1)  no lifting; and (2) alternate between standing and sitting throughout the shift.  Do you know if these restrictions are still in place?  I also understand that Ms. Edwards has an open application for Long Term Disability benefits.  Please advise if you have any information on the status of her LTD claim.

It is also my understanding that the jobs identified in your email are currently "external hire" positions, and no internal candidates are being considered for them at this time.  Ms. Edwards' ability to move to another job within HMMA is subject to her qualifications, as well as a number of policies which apply to all Team Members.

I will be on the road for the rest of today and Thurs.  Please call when you have a minute and we can further discuss.  I copy Jenny for her information and to say Hello.  Thanks -- Trent

    -----Original Message-----
    **From:** Alicia Haynes [mailto:akhaynes@haynes-haynes.com]
    **Sent:** Saturday, March 10, 2007 9:52 AM
    **To:** Scofield, J. Trent
    **Cc:** Jenny Connell
    **Subject:** Tammy Edwards v. Hyundai

    Edwards v. Hyundai, et al.
    1014

    Trent,

    Thanks for your return telephone call on Ms. Edwards.  Can you please tell me the status of her employment?  She needs
    to get back to work.  If her job is not available, there are three of the 37 open jobs currently posted that she wants to apply:

                        "Quality Control"
                Quality Assurance Administrative Assistant
                Job Code:    30

5/18/2007



```
                    "Assembly"
                    General Assistant Support
                    Job Code: 21


                    "Accounting"
                    Product Costs Analysis
                    Job Code: 40
```

Please let me know what we need to do to have Ms. Edward's considered for one of these positions or to be returned to one of her former positions. I will be out of town in trial most of the week, but feel free to call Jenny or to reply via email and I will get back in touch with you. Thanks for your anticipated cooperation in this matter. Alicia

*Alicia K. Haynes*

Alicia K. Haynes
Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, AL 35226
Phone: (205) 879-0377
Fax: (205) 879-3572
E-mail: akhaynes@haynes-haynes.com
Web: www.haynes-haynes.com

5/18/2007

## Jenny Connell

**From:** jenny connell [jlconnell@haynes-haynes.com]
**Sent:** Wednesday, March 14, 2007 2:54 PM
**To:** '5edwards@bellsouth.net'
**Cc:** Alicia Haynes
**Subject:** FW: Tammy Edwards v. Hyundai

Tammy,

Trent Scofield sent the e-mail below this morning.  Please review and respond.  Also, Alicia wants you to fax us the copies of the doctor's notes if there are others that we do not have so that she can see the restrictions.  If we have all of this in the file, just let me know and I'll pull the one's we have for Alicia to review.

*Jenny Connell*, Paralegal
Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, AL  35226
Phone:  (205) 879-0377
Facsimile:  (205) 879-3572
E-mail:  jlconnell@haynes-haynes.com
Website:  www.haynes-haynes.com

PLEASE NOTE:

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and as such is privileged and confidential.  If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Scofield, J. Trent [mailto:Trent.Scofield@ogletreedeakins.com]
**Sent:** Wednesday, March 14, 2007 10:36 AM
**To:** Alicia Haynes
**Cc:** Jenny Connell
**Subject:** RE: Tammy Edwards v. Hyundai

Alicia,

Thank you for your e-mail.  Ms. Edwards remains currently employed at HMMA.  It is my understanding that Ms. Edwards provided HMMA with physician's restrictions which include:  (1) no lifting; and (2) alternate between standing and sitting throughout the shift.  Do you know if these restrictions are still in place?  I also understand that Ms. Edwards has an open application for Long Term Disability benefits.  Please advise if you have any information on the status of her LTD claim.

It is also my understanding that the jobs identified in your email are currently "external hire" positions, and no internal candidates are being considered for them at this time.  Ms. Edwards' ability to move to another job within HMMA is subject to her qualifications, as well as a number of policies which apply to all Team Members.

Thanks -- Trent

*Edwards v. Hyundai, et al.*
1016

5/18/2007

**Jenny Connell**

| | |
|---|---|
| ¯rom: | Alicia Haynes [akhaynes@haynes-haynes.com] |
| ⌐ent: | Tuesday, March 20, 2007 10:21 AM |
| **To:** | Trent Scofield |
| **Cc:** | Jenny Connell |
| **Subject:** | Tammy Edwards v. Hyundai |

Trent, Jenny is sending you the return to work slips with certain restrictions via email.  Please let me know if I need to get her doctor to reevaluate the restrictions for any certain job/position at Hyundai.  I don't think she was lifting in her previous two positions with Hyundai.  She needs to get back to work.  She is the principal bread winner of this family and has three children. Please see what you can do.  Thanks in advance for your efforts.  Alicia

## *Alicia K. Haynes*

Alicia K. Haynes
Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, AL  35226
Phone:  (205) 879-0377
Fax:  (205) 879-3572
E-mail:  akhaynes@haynes-haynes.com
Web:  www.haynes-haynes.com

Edwards v. Hyundai, et al.
1017

5/18/2007

**From:** Scofield, J. Trent [mailto:Trent.Scofield@ogletreedeakins.com]
**S    :** Wednesday, March 14, 2007 10:36 AM
**To:** Alicia Haynes
**Cc:** Jenny Connell
**Subject:** RE: Tammy Edwards v. Hyundai

Alicia,

Thank you for your e-mail.  Ms. Edwards remains currently employed at HMMA.  It is my understanding that Ms. Edwards provided HMMA with physician's restrictions which include:  (1)  no lifting; and (2) alternate between standing and sitting throughout the shift.  Do you know if these restrictions are still in place?  I also understand that Ms. Edwards has an open application for Long Term Disability benefits.  Please advise if you have any information on the status of her LTD claim.

It is also my understanding that the jobs identified in your email are currently "external hire" positions, and no internal candidates are being considered for them at this time.  Ms. Edwards' ability to move to another job within HMMA is subject to her qualifications, as well as a number of policies which apply to all Team Members.

Thanks -- Trent

Edwards v. Hyundai, et al.

1018

5/18/2007

## Jenny Connell

**From:** Scofield, J. Trent [Trent.Scofield@ogletreedeakins.com]
**Sent:** Tuesday, March 27, 2007 11:51 AM
**To:** Alicia Haynes
**Cc:** Jenny Connell
**Subject:** RE: Tammy Edwards v. Hyundai

Re:  Tammy Edwards v. HMMA.

Alicia:

It is my understanding that Ms. Edwards' last assignment on the BC1 did require lifting and standing for prolonged periods of time.  The physician's restrictions which Jenny provided, dated Feb 13 '07 state, "No lifiting; alternate sitting / standing."  These restrictions also state that Ms. Edwards was being re-checked on Feb 16 '07.  I assume the restrictions have not changed.  Please confirm.

Regarding job bid / transfer opportunities, HMMA policy dictates that such job changes are only available to Team Members on active employment status.  Because Ms. Edwards is not on active status, this avenue is not currently available to her.

To return to work, Ms. Edwards' must be released by her physician and/or provided restrictions which would allow her to return to full duty at HMMA.  HMMA's Medical Department will review any updated information provided by Ms. Edwards' physician and will also evaluate any available opportunities for her to return to work in light of any updated information presented.

Ms. Edwards is free to schedule her own appointment by contacting Industrial Care Management ("ICM"), HMMA's on-site medical facility, at (334) 387-8240, or I will be glad to assist in the appointment process.  Just let me know.

Thanks, Trent

-----Original Message-----
**From:** Alicia Haynes [mailto:akhaynes@haynes-haynes.com]
**Sent:** Tuesday, March 20, 2007 10:21 AM
**To:** Scofield, J. Trent
**Cc:** Jenny Connell
**Subject:** Tammy Edwards v. Hyundai

Trent, Jenny is sending you the return to work slips with certain restrictions via email.  Please let me know if I need to get her doctor to reevaluate the restrictions for any certain job/position at Hyundai.  I don't think she was lifting in her previous two positions with Hyundai.  She needs to get back to work.  She is the principal bread winner of this family and has three children.  Please see what you can do.  Thanks in advance for your efforts.  Alicia

*Alicia K. Haynes*

Alicia K. Haynes
Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, AL  35226
Phone:  (205) 879-0377
Fax:  (205) 879-3572
E-mail:  akhaynes@haynes-haynes.com
Web:  www.haynes-haynes.com

## Jenny Connell

**From:** Scofield, J. Trent [Trent.Scofield@ogletreedeakins.com]
**Sent:** Wednesday, March 21, 2007 2:10 PM
**To:** Alicia Haynes
**Cc:** Jenny Connell
**Subject:** RE: Tammy Edwards v. Hyundai

Alicia, Jenny:

I have a call in to HMMA and will report back after I have spoken with them.

Thanks, Trent

> -----Original Message-----
> **From:** Alicia Haynes [mailto:akhaynes@haynes-haynes.com]
> **Sent:** Tuesday, March 20, 2007 10:21 AM
> **To:** Scofield, J. Trent
> **Cc:** Jenny Connell
> **Subject:** Tammy Edwards v. Hyundai
>
> Trent, Jenny is sending you the return to work slips with certain restrictions via email.  Please let me know if I need to get her doctor to reevaluate the restrictions for any certain job/position at Hyundai.  I don't think she was lifting in her previous two positions with Hyundai.  She needs to get back to work.  She is the principal bread winner of this family and has three children.  Please see what you can do.  Thanks in advance for your efforts.  Alicia

*Alicia K. Haynes*

Alicia K. Haynes
Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, AL  35226
Phone:  (205) 879-0377
Fax:  (205) 879-3572
E-mail:  akhaynes@haynes-haynes.com
Web:  www.haynes-haynes.com

## Jenny Connell

**From:** Alicia Haynes [akhaynes@haynes-haynes.com]
**Sent:** Tuesday, April 03, 2007 12:37 PM
**To:** 'Scofield, J. Trent'; Alicia Haynes
**Cc:** Jenny Connell
**Subject:** RE: Tammy Edwards v. Hyundai

Trent, Please let me know what are the physical requirements for the BC1. How much is she required to lift? I have emailed her to see if the doctor has fully released her to return to work without any restrictions. She was in a previous position prior to complaining about the sexual harassment that allowed her to work within her restrictions. Is this previous job no longer available?

Also, am I to understand from your email that even if Ms. Edward's treating physician returns her to work without restrictions that the decision to return to work is contingent on the Hyundai medical department finding an appropriate job? Please explain paragraph 3 of your email. Thanks. Alicia

## *Alicia K. Haynes*

Alicia K. Haynes
Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, AL 35226
Phone: (205) 879-0377
Fax: (205) 879-3572
E-mail: akhaynes@haynes-haynes.com
Web: www.haynes-haynes.com

---

**From:** Scofield, J. Trent [mailto:Trent.Scofield@ogletreedeakins.com]
**Sent:** Tuesday, March 27, 2007 10:51 AM
**To:** Alicia Haynes
**Cc:** Jenny Connell
**Subject:** RE: Tammy Edwards v. Hyundai

Re: Tammy Edwards v. HMMA.

Alicia:

It is my understanding that Ms. Edwards' last assignment on the BC1 did require lifting and standing for prolonged periods of time. The physician's restrictions which Jenny provided, dated Feb 13 '07 state, "No lifiting; alternate sitting / standing." These restrictions also state that Ms. Edwards was being re-checked on Feb 16 '07. I assume the restrictions have not changed. Please confirm.

Regarding job bid / transfer opportunities, HMMA policy dictates that such job changes are only available to Team Members on active employment status. Because Ms. Edwards is not on active status, this avenue is not currently available to her.

To return to work, Ms. Edwards' must be released by her physician and/or provided restrictions which would allow her to return to full duty at HMMA. HMMA's Medical Department will review any updated information provided by Ms. Edwards' physician and will also evaluate any available opportunities for her to return to work in light of any updated information presented.

Ms. Edwards is free to schedule her own appointment by contacting Industrial Care Management ("ICM"), HMMA's on-site medical facility, at (334) 387-8240, or I will be glad to assist in the appointment process. Just let me know.

Case 2:07-cv-00908-MHT-SRW     Document 38-3     Filed 09/02/2008     Page 11 of 13

Thanks, Trent

-----Original Message-----
**From:** Alicia Haynes [mailto:akhaynes@haynes-haynes.com]
**Sent:** Tuesday, March 20, 2007 10:21 AM
**To:** Scofield, J. Trent
**Cc:** Jenny Connell
**Subject:** Tammy Edwards v. Hyundai

Trent, Jenny is sending you the return to work slips with certain restrictions via email.  Please let me know if I need to get her doctor to reevaluate the restrictions for any certain job/position at Hyundai.  I don't think she was lifting in her previous two positions with Hyundai.  She needs to get back to work.  She is the principal bread winner of this family and has three children.  Please see what you can do.  Thanks in advance for your efforts.  Alicia

*Alicia K. Haynes*

Alicia K. Haynes
Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, AL  35226
Phone:  (205) 879-0377
Fax:  (205) 879-3572
E-mail:  akhaynes@haynes-haynes.com
Web:  www.haynes-haynes.com

Case 2:07-cv-00908-MHT-SRW     Document 38-3     Filed 09/02/2008     Page 12 of 13

**Alicia Haynes**

---

| | |
|---|---|
| **From:** | Scofield, J. Trent [Trent.Scofield@ogletreedeakins.com] |
| **Sent:** | Tuesday, July 31, 2007 10:40 AM |
| **To:** | jenny connell |
| **Cc:** | Alicia Haynes |
| **Subject:** | RE: Scofield July 30 2007.pdf |

Re:  Tammy Edwards


Alicia:

I have been in contact with HMMA regarding Ms. Edwards and it is HMMA's position that the decision to end her employment relationship stands.  If Ms. Edwards has not already, she will soon receive COBRA notification and instructions for her consideration.

Sincerely,

Trent

J. Trent Scofield
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, Alabama 35203-2118
(205) 328-1900

This transmission is intended by the sender and proper recipient to be confidential, intended only for the proper recipient and may contain information that is privileged, attorney work product or exempt from disclosure under applicable law.  If you are not the intended recipient, you are notified that the dissemination, distribution or copying of this message is strictly prohibited.  If you receive this message in error, or are not the proper recipient, please notify the sender at either the e-mail address or telephone number above and delete this e-mail from your computer.  Receipt by anyone other than the proper recipient is not a waiver of any attorney-client, work product, or other applicable privilege.  Thank you.




-----Original Message-----
**From:** jenny connell [mailto:jlconnell@haynes-haynes.com]
**Sent:** Monday, July 30, 2007 6:26 PM
**To:** Scofield, J. Trent
**Cc:** Alicia Haynes
**Subject:** Scofield July 30 2007.pdf

**Jenny Connell**, Paralegal

Edwards v. Hyundai, et al.
1174

8/28/2008

Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, AL 35226
Phone: (205) 879-0377
Facsimile: (205) 879-3572
E-mail: jlconnell@haynes-haynes.com
Website: www.haynes-haynes.com

PLEASE NOTE:

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.