## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

TAMMY EDWARDS,                    )
                                 )
     **Plaintiff,**                    )
v.                               )    **CIVIL ACTION NO.**
                                 )    **2:07-cv-908-MHT**
HYUNDAI MOTOR                    )
MANUFACTURING ALABAMA, LLC,  )
and MIKE SWINDLE, individually,  )
                                 )
     **Defendants.**                   )

---

## MOTION FOR LEAVE TO SUPPLEMENT
## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
## MOTION TO ALTER OR AMEND THE COURT'S ORDER ON
## SUMMARY JUDGMENT

---

COMES NOW the Plaintiff and moves this Honorable Court to allow her to amend and supplement her response in opposition to the Defendant's Motion for Summary Judgment based on the recent United States Supreme Court case of *Crawford v. Metro. Gov't of Nashville & Davidson County,* --- U.S. ----, ----, 129 S.Ct. 846, 849, 172 L.Ed.2d 650 (2009). Further, plaintiff moves to alter or amend the court's order on summary judgment.

In this case, the Defendant, Hyundai, moved to dismiss Plaintiff's retaliation claim, specifically involving plaintiff's reassignment, termination, and failure to

reinstate or hire.  Defendant provided that Plaintiff failed to prove a prima facie

case of retaliation that she suffered a materially adverse employment action and

that the adverse action was causally related to the protected expression.  (Doc. 24,

p. 47).

Plaintiff filed her response to the Defendant's motion for summary.  (Doc.

37, pp. 58-60).  Since the filing of plaintiff's response on or about September 2,

2008, the recent case of *Crawford v. Metro. Gov't of Nashville & Davidson*

*County,* --- U.S. ----, ----, 129 S.Ct. 846, 849, 172 L.Ed.2d 650 (2009) was decided

on January 29, 2009.   The *Crawford* case expands retaliation protection.  While

the Court held that an employee who participated in her employer's own internal

investigation of a sexual harassment complaint had engaged in protective activity

by opposing discrimination or harassment the case further defined the term

opposition.

The court provided that the term "oppose," is left undefined by the statute

and, therefore, carries its ordinary meaning, to resist or antagonize...; to contend

against; to confront; resist; withstand." (internal citations omitted).  The court also

provided, citing to the EEOC guidelines:  "when an employee communicates to

her employer a belief that the employer has engaged in...a form of employment

discrimination, that communication" virtually always "constitutes the employee's

2

opposition to the activity." *Id.* (internal citations omitted).

The Supreme Court rejected the Sixth Circuit's position that to invoke the opposition clause requires "demands active, consistent 'opposing' activities to warrant...protection against 'retaliation' and that an employee must instigate or initiate a complaint to be covered." *Id.* at 851. (internal citations omitted). The court further provided that, ""Oppose" goes beyond "active, consistent" behavior in ordinary discourse, where we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it. Countless people were known to "oppose" slavery before Emancipation, or are said to "oppose" capital punishment today, without writing public letters, taking to the streets, or resisting the government. And we would call it "opposition" if an employee took a stand against an employer's discriminatory practices not by "instigating" action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons". Cf. *McDonnell, supra,* at262 (finding employee covered by Title VII of the Civil Rights Act of 1964 where his employer retaliated against him for failing to prevent his subordinate from filing an EEOC charge). There is, then, no reason to doubt that a person can "oppose" by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an

3

employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question." *Id.* at851.

The court provided an example that an employee could oppose by saying nothing at all and ignoring a directive by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons. *Id.* (internal citations omitted). The court rejected the Defendant's argument that the Plaintiff was required to actually initiate a complaint which conforms with the employee's obligation of reasonable care to avoid harm articulated in *Farragher and Ellereth. Id.* fn 3.

**The Causal Connection**

In this case Edwards attempted to return to work in February 12, 2007. Plaintiff was escorted through the back door of the medical department by the security guard. **(Exh. 1, Edwards Depo. pg. 347-349)**. When the nurse asked why the security guard was treating Edwards differently, he stated he was just doing what he had been told to do. The nurse then asked Edwards what that was all about? Edwards became nervous and tearful, explaining that she had turned in a team leader for sexual harassment. *Id.* The nurse recorded her observations in her notes and further called Steve Culpepper to inform him that Edwards had returned to work. Culpepper told the nurse that he had no work for Edwards with her restrictions and sent her home. **(Exh. 2).** The Hyundai nurse noted these

4

comments along with her observations that Edwards was "tearful and nervous" and tearful and conveyed that she was being bothered by the harassment of a team leader that has her very upset. The nurse conveyed that Edwards may not be accommodated anyway but suggested that she needed someone to talk to about the problems she has had. *Id.*

This same information was conveyed to Stacye Jones on February 15, 2007, that Edwards had been sent home when she returned to work and that Edwards wanted to know what to do and how her time off would be charged. **(Exh. 3)**. Jones at this time was reporting to Wendy Warner. **(Exh. 4, Warner Depo. p. 16-17)**. Edwards was told to call Steve Culpepper as well and he informed Edwards he did not have anything for her to do. Later, Edwards was told by another Hyundai manager that it was not necessary to call Culpepper. **(Exh. 1, Edward's Depo. p. 312, 316-320)**. Culpepper told Edwards she should deal with Jane Ramsey and then Ramsey told Edwards her contact for reporting back to work would be Stacye Jones. **(*Id.* at 323-324)**. Edwards followed all instructions given to her by these individuals. **(*Id.* at 323-326)**.

The court found that Edwards was terminated 11 months after complaining to Team Relations and ten months after filing her EEOC charge, so there could be

no close temporal proximity suggesting causation, relying on *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955 (11th Cir.2008)(finding that eight months did not suffice to show temporal proximity between EEOC charge and dismissal of employee). However, the court failed to take notice that Edwards was voicing her opposition, was "tearful and nervous" at Hyundai's medical department based on her back door treatment and questions in her attempts to get back to work in February 2007, at the expiration of her short term disability. Edwards efforts to return to work were being opposed by Hyundai and Edward's managers.

It is a question of fact if Edwards was being denied the return to work in February, 2007 due to her restrictions or because this is a "sensitive subject", as conveyed by Culpepper in his letter to Tom Bondy whether Edwards could be accommodated as she was trying to return to work. ( **Exh. 5**).

To show the adverse action was causally related to the employee's protected expression, Edwards must prove "that the protected activity and the adverse action are not completely unrelated." The causal link requirement is interpreted broadly by courts but  merely showing that the alleged adverse action occurred sometime after the protected expression does not establish the causation element.  For temporal progression to be enough, the events must be in "very close" proximity.

6

*See EEOC v. Reichhold Chem., Inc.,* 988 F.2d 1564, 1571 (11th Cir.1993)*; Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) ("the cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.' ") (citations omitted).

Edwards is not merely relying on temporal proximity but on continued retaliation and the deliberate thwarting of her efforts to return to work. The court found that plaintiff's reassignment to the more strenuous, dirty job closer to her harasser was evidence of retaliation. This retaliatory move is what caused the plaintiff to go on an involuntary medical leave. This is the same retaliatory move that prevented plaintiff from ever returning to work. Hyundai's own nurse acknowledged that "she may not be accommodated anyway". **(Exh. 2).** However prior to her complaints against Swindle, Edwards had been accommodated with a less strenuous job and the ability to alternate sitting, standing and lifting. Edwards had worked with these same restrictions for 7 months and until complaining about Swindle her restrictions were not an issue for Hyundai nor Edwards. That changed when Edwards complained. Hyundai did not cease its retaliation, as the court already found, when plaintiff tried to return to work, it continued those same

7

retaliatory efforts in February 2007.

Further the denial of the return to work and a position within Hyundai are derivative events flowing from the original retaliation.  In other words "but for" the retaliation of being placed in the physically demanding BC-1 job near her harasser, plaintiff would still be at work today.  Edwards  was injured in an automobile accident in January 2006 and worked continuously with restrictions until she complained of sexual harassment and retaliation in July 2006.  After being put on medical leave, Edwards inquired of the outcome of the investigation from Stacye Jones.  Jones told Edwards that a decision had been made but Edwards could not know the decision until she returned to work.  **(Exh.1, Edwards Depo. p. 264-265).**  Hyundai insured, by never returning Edwards to work, that she would never know the results of her complaints or if Swindle was disciplined in any fashion.

## <u>Wendy Warner had knowledge of Edwards complaints</u>

The court in its summary judgment relied erroneously on the fact that Wendy Warner had no previous knowledge of Edward's complaints of sexual harassment.  Specifically the court provided in its order that, "[More importantly, Edwards has presented no evidence to rebut (a) Warner's statement that Edwards was fired because she failed to report back to work after the termination of her

8

long-term medical leave or (b) Warner's statement that she was not aware of either Edwards's in-house complaint or EEOC charge when making the termination decision. Therefore, Edwards has failed to demonstrate causality, and her claim for retaliatory termination fails. Summary judgment will be granted on this retaliation claim."

Stacye Jones, Hyundai corporate representative and the person who investigated Edward's internal complaint of sexual harassment, confirmed in her deposition that Wendy Warner was present in two separate meetings in August 2006 where Edwards and her claims of sexual harassment were being discussed along with Hyundai's legal counsel and its director of human relations. **(Exh. 6, Jones Depo. p. 88-91, 269-272).**

However the factual information gleaned by the court was that Warner testified to the contrary that she was not aware of the investigation or the team relation's investigation of Edward's complaint. **(Exh. 4, Warner Depo. p. 102).** A question of fact exist as to Warner's presence on two different occasions. Warner says she had no knowledge, but Stacye Jones testified to the contrary that Warner was present in two separate meetings of Edward's complaints where Jones was in attendance in August 2006.

Hyundai's position to this court was not forthcoming and it was erroneous

9

for the court to find that Warner had no knowledge when Jones, Hyundai's agent and corporate representative, testified to the contrary. Summary judgment is due to be denied as to Hyundai's retaliation claim based on Edward's termination.

### HMMA's Refusal to Rehire Edwards

At summary judgment Edwards argued that HMMA's refusal to put her back to work or rehire her was also retaliatory decision that derived from the original retaliatory decision of reassignment. The court found that Edwards produced no evidence to that Edwards ever actually reapplied for a position with HMMA after she was terminated.

The court determined that Edwards relied on an email correspondence between her attorney and an attorney for HMMA which occurred in March 2007. At that time, HMMA told Edwards that, in order to get back to work, she would need to obtain a release from her medical restrictions and she would need to make an appointment with HMMA's on-site medical clinic and that she did not take either of these steps. "More importantly, however, she did not actually apply for a new position with HMMA after her employment was finally terminated in June 2007. Thus, her retaliatory refusal-to-hire claim clearly fails; the motion for summary judgment will granted as to this claim."

Again, Stacye Jones confirmed in her deposition that Edwards was trying to

10

come back to work and was conveying this information. **(Exh. 6, Jones Depo. p. 323).** Edwards confirmed that when she called one person and they told her to call another, she always did as she was told and did not refuse to come back to work. Edwards physician had always stated that Edwards could return to her pre-retaliation job in the computer room, however Edwards was limited by restrictions in returning to jobs on the BC-1 line that had been the basis this court found retaliation. **(Exh. 1, Edwards Depo. p. 316, 325-327; 330, 334).**

WHEREFORE, PLAINTIFF MOVES this Honorable Court to allow her to amend and supplement her original opposition to Defendant's motion for summary judgment with this new case and further moves the Court to alter or amend its previous order granting summary judgement to the defendant on the retaliation of the plaintiff in her termination and denial of a position in returning from her involuntary and forced medical leave due to defendant's retaliation in reassigning plaintiff to the BC-1 position closer to her supervisor.

Respectfully submitted,

/s/ Alicia K. Haynes
Alicia K. Haynes
Attorney for Plaintiff

11

**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama  35226
Phone:  (205) 879-0377
Fax:  (205) 879-3572
E-mail:  akhaynes@haynes-haynes.com
ASB-8327-E23A

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of April 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

J. Tobias Dykes
**CONSTANGY, BROOKS &
SMITH, LLC**
One Federal Place, Suite 900
1819 Fifth Avenue North
Birmingham, Alabama  35203

Brian R. Bostick
**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203

/s/ Alicia K. Haynes
OF COUNSEL

12