IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| TAMMY EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:07cv908-MHT |
| | ) | (WO) |
| HYUNDAI MOTOR | ) | |
| MANUFACTURING ALABAMA, | ) | |
| LLC, and MIKE SWINDLE, | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

This case is now before the court on the following

three motions filed by plaintiff Tammy Edwards:  motion

for leave to supplement her opposition to summary

judgment; motion to alter the court's opinion and order

on summary judgment; and motion to compel in camera

review of claimed privileged documents.  On the first

morning of trial, the court denied these motions orally

and indicated that a written order would follow. This is

the promised order.

## I. BACKGROUND

This case was set for trial to begin on April 20, 2009.  On March 27, 2009, this court entered an opinion and order partially granting motions for summary judgment filed by defendants Hyundai Motor Manufacturing Alabama (HMMA) and Mike Swindle.  Edwards v. Hyundai Motor Mfg. Alabama, LLC, ___ F.Supp.2d ____, 2009 WL 807452 (M.D. Ala. 2009).  On April 17, the Friday before the Monday trial, Edwards filed a motion to compel in camera review of HMMA's claimed privileged documents.  On April 20, the morning of trial, Edwards filed a motion to supplement her opppsotion to the motion for summary judgment and a motion to alter or amend the summary-judgment opinion.

With the motion to supplement, Edwards sought to present the evidence and the arguments contained in the motion to alter.  Likewise, with her motion for in camera review, she sought to uncover evidence supporting the motion to alter.  As such, the motions to supplement and

compel were largely tied to the motion to alter. Because, as explained below, the motion to alter was meritless, the other motions were moot.

## II. MOTION-TO-ALTER-JUDGMENT STANDARD

"The decision whether to alter or amend a judgment pursuant to Rule 59(e) [of the Federal Rules of Civil Procedure] is 'committed to the sound discretion of the district judge.'" Mincey v. Head, 206 F.3d 1106, 1137 (11th Cir. 2000) (quoting American Home Assurance Co. v. Glenn Estess & Associates, Inc., 763 F.2d 1237, 1238 (11th Cir. 1985)). However, "the only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors in law or fact." Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007). A party "cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Michael Linet, Inc. v.

<u>Village of Wellington, Fla</u>. 408 F.3d 757, 763 (11th Cir. 2005).

### III. DISCUSSION

### a. Timing of the Motions

First, the court addresses the inappropriate and unexplained timing of these motions. As mentioned above, the motion to compel was filed only one working day before the start of trial, and the motions to alter judgment and supplement her response were filed on the morning of trial. As such, the court had no opportunity to consider these motions until after a jury had been selected in this case and until after the defense had prepared for trial based on the claims that survived summary judgment.

Edwards offers no explanation as to why she waited so long to file these motions. She was provided a privilege log many months before trial and did not move for <u>in camera</u> review of the privileged documents at that point

4

or during discovery proceedings.   Likewise, Edwards presented her response to the motion for summary judgment in September 2008; her motion to supplement that response came over eight months later.   These motions were very untimely.

Finally, Edwards had over three weeks to notice any perceived errors in the summary-judgment opinion and bring them to the attention of the court through a motion to alter.   Instead, she waited until the morning of trial.  If the court had granted the motions to alter and supplement and allowed trial to proceed immediately, it would have worked a manifest injustice on the defendants, who would have suddenly faced additional claims that they were not prepared to defend.   To avoid this unfairness, the court would have been forced to continue trial.  Such a last minute continuance would have been a clear waste of judicial resources, not to mention the time of the jurors, who had already been empaneled.

5

### b. Merits of the Motion to Alter

Notwithstanding the timing issues, the court also denied the motion to alter on the merits.  Edwards made four principal arguments in her motion to alter.  First, she pointed out that, after filing her opposition to the motion for summary judgment, the Supreme Court entered an opinion in Crawford v. Metro. Gov't of Nashville & Davidson County, 129 S. Ct. 846 (2009), that offered a more expansive definition of what it means to "oppose" any practice made unlawful by Title VII.  In Crawford, the Court determined that, "There is ... no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question."  Id. at 851.  She therefore asked the court to reconsider its decision in light of

Crawford.  More specifically, she argued that the court should not have looked only to her in-house sexual-harassment complaint in July 2006 and her EEOC charge in September 2006 as protected activity but should have also considered that she opposed HMMA's unlawful practices in February 2007 when she (a) attempted to return to work at the expiration of her short-term medical leave and (b) complained to a nurse that she was being mistreated because she had filed a sexual harassment complaint. Edwards concluded that these acts of opposition took place after her in-house complaint and EEOC charge, increasing the temporal proximity between her protected activity and her termination and supporting her claim that the two were causally connected.

This argument ultimately failed.  First, Crawford does not reach quite as far as Edwards suggested.  It does not speak to her attempts to return to work at the expiration of her short-term medical leave.  Perhaps these attempts to return to work "opposed" HMMA's

assertions that it had no positions available that could accommodate her medical restrictions, but they did not "oppose" any sexual harassment.  Her complaints to the nurse, however, present a closer question because she objected to perceived mistreatment that she believed to be connected to her sexual harassment complaints.  Even here, however, <u>Crawford</u> does not apply.  <u>Crawford</u> dealt with an employee who answered questions asked by her "boss."  As such, there was no question whether her employer was aware of the complaints.  Here, Edwards answered questions asked by a nurse.  But there is no evidence or suggestion that this nurse was above Edwards in the chain of command or empowered to make employment decisions.  <u>Crawford</u> does not change the basic requirement that an employer must be aware of any "opposition" in order to retaliate against it.  Although it is evident that HMMA knew Edwards had attempted to return to work, Edwards has not clarified whether the nurse actually reported her complaints of mistreatment to

8

a supervisor or to anyone else who may have retaliated against her because of these complaints.

Most importantly, the court notes that, even if it had considered her attempt to return to work and her complaints to the nurse as opposition, the time period between those protected activities (February 12, 2007) and when she was finally terminated (July 11, 2007) would still have totaled five months.  Without more, even a three or four month gap between protected activity and an adverse employment action is insufficient to show causation.  See Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir.2006) (stating that, "We are not persuaded that three months ... is sufficiently proximate to show causation"); Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004) (holding that, "By itself, the three month period ... does not allow a reasonable inference of a causal relation"); Wascurea v. City of South Miami, 257 F.3d 1238, 1248 (11th Cir. 2001) (finding three and one-half months insufficient to establish causation).  As such,

9

Edwards's arguments failed to demonstrate that the court had committed any legal or factual errors in her case, let alone errors that were sufficiently "manifest" to warrant an alteration of the judgment.

Second, Edwards argued that HMMA's refusal to let her return to work was a "derivative event[] flowing from the original retaliation." M. Alter Summ. J. at 8. Specifically, she argued that she never would have needed to take medical leave if she had not been transferred to a more strenuous position after making her in-house sexual harassment complaints. The precise thrust of this argument remains unclear. To the extent Edwards was attempting to assert a constructive-discharge theory, she did not do so clearly or explicitly, nor had she done so clearly at any previous point in this litigation. To the extent Edwards simply signaled her intention to seek damages flowing from her transfer, this argument did not address or allege any errors in the court's summary-judgment opinion and did not merit a response.

Third, Edwards sought reconsideration because the court's summary-judgment opinion relied on testimony by Wendy Warner, the Team Relations employee who ultimately terminated Edwards, that she did not know about Edwards's sexual harassment complaints when she made the decision to terminate her.  Edwards pointed out that there was evidence in the record contradicting Warner's assertion. Specifically, Stacye Jones, the Team Relations employee who investigated Edwards's complaint, testified in a deposition that Warner was present at meetings where Edwards's complaint was discussed before Warner made the decision to terminate Edwards.  Thus, Edwards argued that there was a question of fact as to what Warner knew when she terminated Edwards.

However, Edwards admitted that she never pointed the court to this evidence nor made any argument rebutting Hyundai's assertion that Warner had no knowledge of Edwards's complaint when she made the termination decision.  Jones's deposition is not new evidence that

11

Edwards could not have discovered before filing her opposition to summary judgment; it is simply evidence that she failed to bring to the court's attention and failed to use in her arguments. As stated above, a party "cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Michael Linet, Inc. v. Village of Wellington, Fla. 408 F.3d 757, 763 (11th Cir. 2005). The court, in considering a summary-judgment motion, was under no obligation to comb hundreds of pages of depositions in search of evidence contradicting arguments made by the movants. See Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996) ("Rule 56 ... does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition."); Lawson v. Sheriff of Tippecanoe County, Ind., 725 F.2d 1136, 1139 (7th Cir. 1984) ("The judge was not obliged to comb the record for

evidence contradicting the defendant's affidavit"); Karlozian v. Clovis Unified School District, 8 Fed. Appx. 835, 2001 WL 488880 at 1 (9th Cir. 2001) ("While pretext evidence may have been buried in [the plaintiff's] 242 page deposition, a district court is not required to comb the record to find some reason to deny a motion for summary judgment."); Preis v. Lexington Ins. Co., 508 F.Supp.2d 1061, 1068 (S.D. Ala. 2007) (Steele, J.) (stating that, "Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions. ... Accordingly, the Court's review of the parties' submissions is limited to the portions which they have specifically cited."). In the end, Edwards had the obligation to bring this evidence and argument to the court's attention while the motions for summary judgment were pending; she failed in this duty, and the court

refused to reconsider this matter, especially on the day of trial.

Finally, Edwards argued that, in granting summary judgment on the refusal to rehire claim, the court wrongly relied on the fact that she never reapplied for a position with HMMA.  Specifically, she asserted that she did not need to reapply because HMMA knew that she wanted to return to work.  Edwards presented no new evidence on this claim, however, and the court had already considered and rejected this argument in the opinion on summary judgment.

In conclusion, Edwards's motion to alter summary judgment presented no new evidence that could not have been presented during the pendency of the motion for summary judgment, and she made no arguments demonstrating that the court committed a manifest error of law or fact. As such, her motion to alter summary judgment was orally denied in its entirety.  Because the other motions were

largely dependant on the motion to alter, they were orally denied as well.

***

Accordingly, the following written ORDER is entered:

(1) Plaintiff Tammy Edwards's motion for in camera review of privileged documents (doc. no. 126) is denied.

(2) Plaintiff Edwards's motion to supplement her response to the motion for summary judgment (doc. no. 128) is denied.

(3) Plaintiff Edwards's motion to alter the court's opinion and order on summary judgment (doc. no. 128) is denied.

DONE, this the 5th day of May, 2009.

                    /s/ Myron H. Thompson
            UNITED STATES DISTRICT JUDGE